# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTE EBO, | ) |
| Petitioner | ) ) |
| | ) Criminal Docket No. 17-cr-155 |
| v. | ) Civil Docket No. 19-cv-713 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Petitioner Donte Ebo pleaded guilty to a two-count Indictment charging him with unlawfully possessing a firearm and distributing a mixture of cocaine base and fentanyl. Because Ebo pleaded guilty without a written agreement between him and the United States, he retained all of his appellate and collateral review rights. Today, Ebo exercises his right to collateral review of his conviction under 28 U.S.C. § 2255. Ebo tells the Court that the Federal Public Defender appointed during his criminal case failed to provide the effective assistance promised by the Sixth Amendment. And as a result of counsel's ineffective assistance, Ebo claims, he received a sentence that included six (6) years of supervised release instead of three (3). The Court, after careful review of Ebo's petition and the record, cannot agree with Ebo's assertions. Ebo received the effective assistance of counsel that our Constitution promises to all criminal defendants. As a result, Ebo's petition is **DENIED**.

## I. BACKGROUND

The factual basis for Ebo's conviction is largely irrelevant to the Court's task in deciding his § 2255 petition. So the Court will refrain from a detailed recitation of the events leading to Ebo's arrest. Instead, Ebo's petition largely turns on procedural matters during the criminal case

1

against him. In June 2017, a federal grand jury indicted Ebo on one (1) count of unlawful possession with intent to distribute a mixture of cocaine base and fentanyl, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), as well as one (1) count of unlawful possession of a firearm, under 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 12.) Soon after, Assistant Federal Public Defender Andrew Lipson entered his appearance on Ebo's behalf. (Notice of Att'y Appearance, ECF No. 8.) In early May 2018, the Court entered a Scheduling Order setting a change of plea hearing for 2:00 PM on May 17, 2018. (Scheduling Order, ECF No. 34.) On May 17, the day set for the change of plea hearing—but before the hearing itself—the Government filed an Information to Establish Prior Conviction pursuant to 21 U.S.C. § 851 on the docket.[1] (ECF No. 35.) The Government's § 851 Information relied on Ebo's 2008 Pennsylvania state conviction for possession with intent to deliver a controlled substance under 35 Pa. Cons. Stat. § 780-113(a)(30). (ECF No. 35.)

Ebo's change of plea hearing kicked off later that same day—May 17, 2018—and ended with the Court accepting Ebo's plea of guilty as to both counts of the Indictment. (Minute Entry, ECF No. 36; Guilty Plea Entry, ECF No. 37.) During the hearing, the Court advised Ebo of the maximum possible penalties under each count. The colloquy followed as such:

> **The Court:** . . . As to Count 1 of the indictment, the maximum penalties are any or all of the following: A term in prison of up to twenty years, a fine of up to one million dollars, a term of supervised release of at least three years.
> If it were to turn out that your conviction on Count 1 is for a second or later felony drug conviction, whether it's federal, state or foreign, that has become final, then the maximum penalties change. The maximum becomes a term of imprisonment of up to 30 years, a fine of up to $2 million, *and a term of supervised release of at least six years.*

---

[1] The Notice of Electronic Filing, generated by the Court's CM/ECF system, shows that the Government filed the Information at 1:29 PM EDT on May 17, 2019. (Notice of Electronic Filing, Information to Establish Prior Conviction, ECF No. 35.) The Notice of Electronic Filing shows that Ebo's attorney, Andrew Lipson, received a copy of the Information when it was filed. (*Id.*) And under our District's Local Rules—which were in effect throughout the entirety of Ebo's case—"[t]ransmission of the Notice of Electronic Filing constitutes service of the filed document upon each party in the case who is registered as a Filing User." W.D. Pa. Crim. R. 49(C) (effective Nov. 1, 2016).

2

> . . . .
>
> Do you understand those things, sir?
>
> **Mr. Ebo:** Yes, your Honor.

(Tr. of Change of Plea Hr'g, ECF No. 76, at 12:24–13:9, 14:8–9 (emphasis added).) At the change of plea hearing both the Government and Ebo's counsel confirmed that there was no plea agreement in the case. (*Id.* at 16:6–13, 17:3–11.) Ebo himself also acknowledged that he intended to plead guilty without a "plea bargain or plea arrangement or agreement." (*Id.* at 16:6–9.) In fact, the Government never even offered a formal plea agreement to Ebo. (*Id.* at 16:6–13, 17:3–11.) And Ebo confirmed that he understood the Court could sentence him to the maximum penalties allowed under the applicable statutes. (*Id.* at 16:22–17:2.) In the end, Ebo pleaded guilty—and the Court accepted his plea—as to all counts of the Indictment. (ECF No. 37.)

Following Ebo's guilty plea, the Court ordered that the Probation Office prepare a Presentence Report ("PSR"). (Order, ECF No. 39.) In the PSR, the Probation Office specifically noted the mandatory six-year term of supervised release resulting from the Government's § 851 Information. (PSR, ECF No. 45, at ¶75.) Ebo and his defense attorney reviewed the PSR and filed a position notice that "Mr. Ebo has no objections, additions, or corrections to the contents of the PSR." (Position of Def., ECF No. 48.) Nor did Ebo or his counsel file any objection under 21 U.S.C. § 851(c), to the Government's use of his prior conviction.

At Ebo's sentencing hearing, Ebo's attorney noted that "[i]n light of the government's election to file a Section 851 notice . . . the penalty will be doubled in the form of a six-year term of supervision." (Tr. of Sentencing Hr'g, ECF No. 61, at 22:12–14.) Far from objecting to the Government's § 851 Information, Ebo's attorney noted that the additional period of supervision would have an "extraordinary effect" on ensuring Ebo stayed on the straight-and-narrow following

3

his release from incarceration. (*Id.* at 22:16.) Ebo, for his part, did not challenge the Government's § 851 Information during his allocution at the sentencing hearing. (*Id.* at 25:23–27:19.) And when the Court asked Ebo whether he personally reviewed the PSR with his attorney before the sentencing hearing, Ebo confirmed that he had. (*Id.* at 8:1–4.)

The Sentencing Guidelines recommended an advisory sentence between fifty-seven (57) and seventy-one (71) months of incarceration. Ebo's counsel vigorously argued that U.S.S.G. § 2D1.1 drove Ebo's advisory sentencing guidelines range. That section of the guidelines imposed a higher penalty for cocaine base than for powder cocaine. (*Id.* at 15:14–16:10.) The Court agreed, concluding that § 2D1.1 would cause an unnecessary sentencing disparity in Ebo's case, and therefore varied downwards to a guidelines range of forty-one (41) to fifty-one (51) months. (*Id.* at 33:10–12.) The Court then sentenced Ebo to a period of incarceration of forty-two (42) months. (Judgment, ECF No. 60.) As for the term of supervised release, because the United States filed a § 851 Information, Ebo received a mandatory sentence of six (6) years of supervised release. (*Id.*)

Ebo did not directly appeal his conviction. Instead, Ebo filed this collateral attack within one (1) year of his conviction as required by 28 U.S.C. § 2255(f). The Court issued a *Miller* notice and Ebo elected to adjudicate his § 2255 petition as filed. (Notice, ECF No. 63; Resp., ECF No. 72.) Ebo's only claim is that his defense attorney provided constitutionally ineffective assistance during his criminal proceedings. (ECF No. 62.) The United States responded. (Resp., ECF No. 74.) With that, the Court can decide Ebo's petition.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in federal custody may collaterally attack a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

4

maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). An evidentiary hearing is required for a § 2255 motion unless the filings and record of the case conclusively show that the petitioner has no right to relief. 28 U.S.C. § 2255(b); *see also Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In determining whether an evidentiary hearing is required, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).

## III. DISCUSSION

In this § 2255 petition, Ebo brings a single claim: ineffective assistance of counsel.[2] Ebo gives two (2) grounds to support his claim. First, Ebo asserts that his "counsel was ineffective by advising [him] to enter into a plea agreement with a [sic] improper sentencing enhancement based on 851 enhancement on supervised release." (ECF No. 62, at 5.) Second, Ebo asserts that his attorney should have "asked the Court to continue [his] sentencing until the signing of the First Step Act." (*Id.* at 8.) Neither argument holds water, and Ebo's petition is denied.

### A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees every criminal defendant "the Assistance of Counsel for his defence." U.S. Const. amend VI. But that guarantee would be mere words if the defendant's counsel was not effective in her or his representation of the defendant. So our Supreme Court interpreted the Sixth Amendment to require that the defendant receive "effective" representation. *See Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland* provides the two-prong legal standard for analyzing ineffective assistance of

---

[2] Although Ebo did not file a direct appeal of his conviction, the Court can still address his ineffective assistance of counsel claims in this § 2255 proceeding. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) ("We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

5

counsel claims. First, the Court looks for deficient performance on the part of the attorney. *See id.* at 688 (asking whether "counsel's representation fell below an objective standard of reasonableness."). Second, the Court asks whether the defendant suffered any prejudice as a result of counsel's deficient performance. *See id.* at 693 ("Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense."). Not limited to counsel's performance at trial, *Strickland*'s two-prong test equally "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

### i. *Deficient Performance*

For *Strickland*'s first prong—whether counsel provided deficient performance—"[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Though identifying the "prevailing professional norms" is not always a simple task. *Compare Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (noting that the Court has long referred to ABA Guidelines) *and Hummel v. Rosemeyer*, 564 F.3d 290, 297 (3d Cir. 2009) ("The [ABA] standards are guides, but only guides, to what is reasonable"), *with Bobby v. Van Hook*, 558 U.S. 4, 13 (2009) (Alito, J., concurring) ("I see no reason why the ABA Guidelines should be given a privileged position" in measuring counsel's performance).

In the plea context, the Supreme Court has identified a handful of circumstances where counsel is expected to perform in a specific manner under prevailing professional norms. In *Missouri v. Frye*, the Supreme Court held that counsel's performance was constitutionally deficient when he failed to inform his client of a formal plea offer extended by the prosecution. 566 U.S. 134, 147 (2012). A few years earlier, in *Padilla v. Kentucky*, the Supreme Court found constitutionally deficient performance when an attorney failed to advise his client that a guilty plea

would trigger automatic deportation—something that counsel should have easily recognized by reading the removal statute. 559 U.S. 356, 368–69 (2010). And our Court of Appeals has held that counsel is deficient when she or he does not "know the Guidelines and the relevant Circuit precedent" relating to the client's guilty plea. *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).

Here, it is somewhat unclear exactly what Ebo thinks his lawyer did wrong. At first, Ebo argues that his attorney "was ineffective by advising [him] to enter into a plea agreement with a[n] improper sentencing enhancement" based on the § 851 Information. (ECF No. 62, at 5.) As his petition goes on, however, Ebo's argument changes to: "[I] was never given a [section] 851 notice or aware of any enhancement until after sentencing." (*Id.* at 6.) Later Ebo argues that his attorney was "ineffective for not arguing [that the § 851 Information was improper] at sentencing and not informally making [him] aware of all the charges that [he] was pleading to." (*Id.*)

For starters, Ebo argues that he is entitled to rescission of his guilty plea because of his counsel's allegedly deficient performance. Ebo is correct that many courts analogize plea bargains to contracts. *See, e.g., United States v. Gilchrist*, 130 F.3d 1131, 1134 (3d Cir. 1997) (citing *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989) ("Plea agreements are contractual and therefore are to be analyzed under contract law standards.")). But it takes two to tango. Not only did Ebo plead guilty without a formal agreement with the United States, the Government never formally offered a plea deal. (ECF No. 76, at 16:6–13, 17:3–11.) Instead, Ebo pleaded guilty to the Indictment with no promises from the Government. So any contractual remedies he seeks today are inapt.

As for his second argument, that the Government did not file a § 851 Information and that he was unaware of potential sentencing implications until after sentencing, Ebo is again incorrect.

7

First off, the Government filed the § 851 Information before Ebo's change of plea hearing. (ECF No. 35.) Yes, the Government filed the § 851 Information only an hour before Ebo's change of plea. But the text of § 851 does not say how long before the defendant's plea the Information must be filed. *See* 21 U.S.C. § 851. All the statute says is that the Government must file the Information "before entry of a plea of guilty," and here the Government filed the § 851 Information before Ebo pleaded guilty.

As for Ebo's assertion that he was unaware of the § 851 Information's implications until after sentencing, the Record says otherwise. At the very least, Ebo knew of the § 851 Information at sentencing, because his attorney, the Assistant United States Attorney, and the Court referenced the § 851 Information during the sentencing proceedings. Ebo's attorney noted that "[i]n light of the government's election to file a Section 851 notice . . . the penalty will be doubled in the form of a six-year term of supervision." (Tr. of Sentencing Hr'g, ECF No. 61, at 22:12–14.) And Ebo did not object to the § 851 Information during his sentencing allocution. (*Id.* at 25:23–27:19.) Along the same lines, Ebo told the Court that he reviewed the PSR with his attorney before the sentencing hearing. (*Id.* at 8:1–4.) That PSR explicitly referenced the six-year mandatory minimum term of supervised release caused by the § 851 Information. (PSR, ECF No. 45, at ¶75.) So the Record is replete with evidence that Ebo knew of the § 851 Information before his sentencing hearing.

Ebo's third argument—that his counsel was "ineffective for not arguing [that the § 851 Information was improper] at sentencing and not informally making [him] aware of all the charges that [he] was pleading to"—also fails. (ECF No. 62, at 6.) The Court has already addressed why the record belies Ebo's argument that he did not know what he pleaded guilty to. As for Ebo's argument that his attorney failed to argue the § 851 Information was improper, the Court concludes

8

otherwise. The Government's § 851 Information established Ebo's prior state conviction for violation of 35 P.S. § 780-113(a)(30)—Pennsylvania's possession with intent to distribute a controlled substance statute. According to Ebo's PSR, that conviction involved his possession with intent to distribute cocaine base—one of the same controlled substances involved in this case. (PSR, ECF No. 45, at ¶46.) Because cocaine base is a Schedule II substance, his previous conviction exposed Ebo to more than one (1) year of imprisonment. *See* 35 P.S. §§ 780-104(2); 780-113(f)(1). In other words, it counted as a "felony drug offense." *United States v. Dotson*, 513 F. App'x 221, 224 (3d Cir. 2013) ("[T]he predicate drug offense need only be punishable by more than a year of imprisonment" to qualify under 21 U.S.C. § 841). So Ebo's counsel did not deviate from professional norms by failing to raise a losing argument over the § 851 Information. *Cf. United States v. Velez*, No. CR 06-338-02, 2017 WL 3028612, at *3 (E.D. Pa. Jan. 6, 2017).

### ii. *Prejudice*

As for *Strickland*'s prejudice prong, the petitioner must show there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For an ineffective assistance of counsel claim in the context of a guilty plea, the way the Court examines prejudice can vary.

In *Missouri v. Frye*, 566 U.S. at 148, and *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012), the Supreme Court held that a defendant must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea." *Frye*, 566 U.S. at 147. But *Lafler* and *Frye* addressed cases in which the defendant *did not* plead guilty because of counsel's deficiency—so the ineffective assistance led to the offer's rejection, not its acceptance. *See Lee v. United States*, 137 S. Ct. 1958, 1965 & n.1 (2017). In those two cases, the relevant

9

question was whether the defendants "demonstrate[d] a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel" *and* "demonstrate a reasonable probability" the prosecution would not have withdrawn the offer or the trial judge refuse to accept the plea. *Frye*, 566 U.S. at 147. But *Frye* and *Lafler*'s prejudice inquiry does not fit circumstances in which the defendant claims counsel's ineffective assistance caused his guilty plea. For that, the Supreme Court's earlier decision in *Hill v. Lockhart* provides the prejudice standard.

In *Hill*, the Supreme Court addressed a case in which the defendant *did* plead guilty. 474 U.S. at 59. There, the Supreme Court implemented *Strickland*'s prejudice prong by requiring that the defendant demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* In *Hill*, defense counsel incorrectly told the defendant that he would be eligible for parole after he served one-third of his sentence, when really the law required that the defendant serve half of his sentence before he became parole eligible. *See id.* at 54–55. Without answering whether counsel's performance fell below prevailing professional norms, the Supreme Court held that the defendant failed to prove prejudice. *Id.* at 59–60. Nothing in the habeas petition before the *Hill* Court "support[ed] the conclusion that he placed particular emphasis on his parole eligibility." *Id.* at 60. As a result, the defendant in *Hill* could not show a reasonable probability that, had he known his parole prospects, he would have insisted on going to trial. *See id.*

On the other hand, the Supreme Court's more recent decision in *Lee v. United States* encountered a defendant who did claim that he placed particular importance on a factor about which his attorney provided incorrect counsel. 137 S. Ct. at 1965–68 (addressing the prejudice prong in the context of a *Padilla* error). There, the defendant argued that counsel's incorrect advice

10

about the immigration consequences of his plea prejudiced him. *Id.* The defendant affirmatively asserted that he prized avoiding deportation more than he worried about a longer period of incarceration. *Id.* at 1367–68. The Supreme Court held that "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" will not cut it to prove *Strickland*'s prejudice prong. *Id.* at 1367. Instead, "[j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Then, noting the fact that the defendant repeatedly stated—including during his plea colloquy—that deportation was the determinative issue in his plea decision, the Supreme Court held that he surmounted *Strickland*'s high bar for proving prejudice. *Id.* at 1367–68. In doing so, the Supreme Court made clear that *Lee*'s case was the exceptional one when the defendant could point to a particular issue dispositive in his plea decision *and* there was contemporaneous evidence of the immense importance the defendant assigned to that issue. *Id.*

But *Hill* and *Lee*'s articulation of prejudice assumes a defendant who claims he would have gone to trial absent his counsel's deficient performance. *Lee*, 137 S. Ct. at 1965–68; *Hill*, 474 U.S. at 59. Thus neither the *Lafler* and *Frye* line of cases, nor the *Hill* line of cases, presented a situation in which the defendant claims he expected a lesser term of supervised release (or even a lesser sentence), but does not claim that his plea would have been any different had his lawyer performed up to prevailing professional standards.

When a petitioner's prejudice arguments center not on whether he would have entered a different plea, but simply on the fact that his attorney misadvised him about some aspect of his potential sentence before his plea, our Court of Appeals has set a high bar. In *United States v. Shedrick*, the Third Circuit held that a properly conducted plea colloquy ameliorates prior incorrect sentencing advice provided by the defendant's attorney. 493 F.3d 292, 299–300 (3d Cir. 2007).

11

There, the defendant alleged that his attorney incorrectly advised him about the maximum possible penalty he faced under a formal plea agreement with the government. *Id.* The Third Circuit rejected the defendant's petition, however, because the district court conducted an adequate plea colloquy. *Id.* at 300. Thus, the district court's plea colloquy undid any misconceptions caused by defense counsel's erroneous advice. *Id.* ("[A]ny erroneous sentencing information allegedly provided by defense counsel was corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [the defendant's] potential sentence.").

While *Shedrick* involved a defendant pleading guilty under a formal plea agreement, its reasoning still applies when the defendant pleads guilty without a formal agreement. Even with no plea agreement, the district court's properly conducted plea colloquy informs the defendant of the maximum possible penalty that could result from a guilty plea. *See United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015); *Shedrick*, 493 F.3d at 299–300. And the defendant is similarly on notice of the court's discretion in setting that sentence. *See Shedrick*, 493 F.3d at 300. So the district court's colloquy, in a sense, fulfills defense counsel's obligation to provide the defendant with sufficient information to make "a reasonably informed decision" about pleading guilty. *Cf. Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)); *but see Bui*, 795 F.3d at 367–68 (granting § 2255 petition partly because the district court's plea colloquy reinforced, rather than remedied, defense counsel's erroneous sentencing advice). In the mine run of cases, then, a properly conducted sentencing colloquy prevents a defendant from later claiming *Strickland* prejudice based on counsel's pre-plea erroneous sentencing prediction.

Here, Ebo cannot show prejudice. First, he cannot satisfy *Lafler* and *Frye*'s framework for analyzing prejudice in the context of a guilty plea. Those cases involved defendants who did not

plead guilty because their counsels' deficient performance deprived them of the benefit of a plea bargain. Both cases are inapt because Ebo pleaded guilty without ever receiving a formal plea offer. (ECF No. 76, at 16:6–13, 17:3–11.) So Ebo was never "subjected" to a trial that he otherwise would have avoided had he been aware of a plea offer from the Government. The Government made no formal plea offer. Instead, Ebo simply pleaded guilty to the Indictment.

Ebo similarly cannot satisfy *Hill* and *Lee*'s formulation of prejudice. That is because Ebo's petition never asserts that he would have entered anything other than a plea of guilty. (ECF No. 62.) While Ebo writes that the Government did not file the § 851 Information properly and that his attorney erroneously advised him about his sentencing exposure, he never says had either of those factors been different that he would have gone to trial rather than pleading guilty. (*Id.*) *Hill* and *Lee*'s prejudice framework presumes that, had the defendant learned about some consequence of his guilty plea, he would not have pleaded guilty and instead risked a more serious sentence at trial. *See Lee*, 137 S. Ct. at 1965–68

In *Lee* the Supreme Court held that the petitioner met *Strickland*'s high bar because had he known the immigration consequences of his plea he would not have pleaded guilty *and* there was contemporaneous evidence of that fact in the record. Here, there is no evidence—let alone contemporaneous evidence—that Ebo prized a shorter term of supervised release above all else. If Ebo had gone to trial rather than pleaded guilty he would have lost the three-point adjustment that he received for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). (PSR, ECF No. 45, at ¶¶36–37) That would have meant an offense level of twenty-four (24) instead of twenty-one (21). (*Id.*) For Ebo, the loss of that three-point adjustment would have meant a Guidelines range of seventy-seven (77) to ninety-six (96) months of incarceration, rather than the fifty-seven (57)

to seventy-one (71) month range the Court calculated after the § 3E1.1 adjustment.[3] So for Ebo's argument to carry the day under *Lee* and *Hill*, he would need to assert that he was willing to risk six (6) to thirty-nine (39) additional months in prison just to receive a shorter period of supervised release. Such an argument is unsupported by the record. What's more, that argument is illogical because the Government's § 851 Information would have had the same effect whether he pleaded guilty or went to trial.

Ebo's only remaining argument to meet *Strickland*'s prejudice prong is to point to his attorney's allegedly erroneous advice about his sentencing exposure. The Third Circuit's decision in *Shedrick* guides the Court's analysis. 493 F.3d at 299–300. There, our Court of Appeals held that a properly conducted plea colloquy remedies defense counsel's erroneous advice about the defendant's sentencing exposure. *Id.* Here, the Court's plea colloquy correctly informed Ebo of his sentencing exposure. The Court told Ebo: "If . . . your conviction on Count 1 is for a second or later felony drug conviction . . . then the maximum penalties change. The maximum becomes a term of imprisonment of up to thirty years, . . . *and a term of supervised release of at least six years.*" (ECF No. 76, at 12:24–13:9, 14:8–9 (emphasis added).) Ebo assured the Court that he understood his term of supervised release might be six (6) years. (*Id.*) And he decided to plead guilty anyways. Whether or not Ebo's attorney said anything different about the potential term of supervised release before the change of plea hearing, Ebo knew full well what he faced when he changed his plea to guilty. Under Third Circuit precedent, the Court's colloquy erased any alleged error, and Ebo suffered no prejudice.

---

[3] Ebo's criminal history category IV status would stay the same either way. So the math reflected here simply uses the 2016 Guidelines Manual to identify the difference between offense level twenty-one (21) and twenty-four (24) for a defendant who has a category IV criminal history.

14

### B. The First Step Act

Ebo's ineffective assistance of counsel claim related to the First Step Act is partly wrapped up with his § 851 Information claim. To the extent that Ebo argues that he "didn't receive a 851 Notice to show what type of conviction was used, and was that conviction for a serious drug conviction," the Court's discussion above cuts off that line of argument. But Ebo's First Step Act claim raises one (1) issue not yet addressed by the Court. That is, did Ebo's attorney provide ineffective assistance by not asking the Court to continue Ebo's sentencing until after the signing of the First Step Act. The Court concludes that counsel's decision to not move for a continuance based on the possibility that a proposed bill would become law does not violate the Sixth Amendment—at least in Ebo's circumstances.

The Court sentenced Ebo on October 29, 2018. (ECF No. 60.) Congress passed the First Step Act on December 20, 2018, and the President signed it into law the following day. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). So there was a nearly two (2) month gap between Ebo's sentencing and when the First Step Act became law. In that time, the Act's passage was not a *fait accompli*. Rather, even a light reading of the Congressional record shows a flurry of activity in both the Senate and House in the time between Ebo's plea and the President's signature. Neither Ebo nor the United States identified any case law requiring defense counsel to wait for bills to become laws before scheduling sentencing. And the Court itself could not identify any such precedent.

The decision to proceed with sentencing in late October represents exactly the sort of strategic decision that *Strickland* and its progeny say this Court should not second guess. *Accord Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland*, 466 U.S. at 689–90). Ebo's counsel made the decision to go ahead with sentencing and argue that the Court should sentence

below the guidelines because Ebo's range reflected a gross disparity between crack and cocaine charges. That strategic decision proved successful, because the Court varied downwards to a guidelines range of forty-one (41) to fifty-one (51) months, and ultimately sentenced Ebo on the low end of the guidelines at forty-two (42) months. (ECF No. 61, at 33:10–12.) So it is tough to see how the Court could say that decision fell below "prevailing professional norms."

Finally, it is important to note that Ebo's petition does not ask this Court to grant him any relief under the First Step Act. Instead, Ebo only invokes the First Step Act to say that his attorney should have continued sentencing until after its passage. Throughout his § 2255 petition, Ebo unambiguously states that his sole claim is for ineffective assistance. And here, the Court concludes that his First Step Act arguments do not demonstrate that he suffered ineffective assistance of counsel.

## IV.   **CERTIFICATE OF APPEALABILITY**

To appeal from a final order in a § 2255 proceeding, the petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability "may issue only upon 'a substantial showing of the denial of a constitutional right.'" *Michael v. Horn*, 459 F.3d 411, 418 n.9 (3d Cir. 2006) (quoting 28 U.S.C. § 2253(c)(2)). When the Court denies the petition on the merits of the claims, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons stated above, Ebo's petition does not make that showing. Therefore, the Court declines to issue a certificate of appealability regarding Ebo's ineffective assistance of counsel claim.

16

## V. CONCLUSION

The Court concludes that the files and records in this case conclusively show that Ebo is not entitled to relief under § 2255. For both of his ineffective assistance of counsel claims, Ebo is unable to meet *Strickland*'s standard. Because the record unambiguously demonstrates that Ebo's claims fail, no evidentiary hearing is warranted. Ebo's Motion to Vacate Sentence Under 28 U.S.C. § 2255, is therefore **DENIED**, and no Certificate of Appealability shall issue, for the reasons stated.

Mark R. Hornak
Chief United States District Judge

Dated: February 10, 2020
cc: All counsel of record via ECF;
     Petitioner via U.S. Mail